IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALSON ALSTON, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | Civil Action |
| | : | No. 17-4506 |
| NATIONAL CONFERENCE OF BAR | : | |
| EXAMINERS, et al., | : | |
|     Defendants. | : | |

**McHUGH, J.**     **June 7, 2018**

**<u>MEMORANDUM</u>**

    This is a civil rights action brought by a recent law school graduate, Alson Alston, proceeding *pro se*, claiming violations of the Fifth and Fourteenth Amendments, and raising state law claims of negligence and defamation, arising out of his difficulty in passing the bar exams of two states. Defendants move to dismiss on multiple grounds, and the briefing addresses a number of complex legal issues. But in the final analysis, Plaintiff's case suffers from fundamental, incurable deficits, with the result that it is not necessary to address the full panoply of issues raised.

    The heart of Alston's argument is that the grading methodology employed by Defendants National Conference of Bar Examiners (NCBE) and the Pennsylvania and New Jersey Boards of Law Examiners [hereinafter "PA Board" and "NJ Board," respectively] is "fundamentally arbitrary, irrational, and random," since it results in some applicants getting a failing grade when they would have passed under a different, allegedly more accurate method. Defendants' method consisted of calculating a single score from each portion of the two-part exam, scaling those scores individually (to correct for differences among from year to year), then combining and

1

measuring them against a single cutoff score.  This resulted in Alston receiving a score that was just four points shy of passing the July 2015 Pennsylvania bar exam, and one point shy of passing the February 2016 New Jersey bar exam.

Alston contrasts Defendants' methodology with the score band method employed by the Law School Admissions Counsel (LSAC), which he argues would have provided a "statistically accurate representation" of his performance because it takes implicit error into account. According to the Complaint, under the score band approach, the test taker is not assigned a single numerical value, but a range of scores derived from a score on the exam that reflects the level of desired proficiency, plus and minus the calculated error—or standard deviation—for the exam. Any score within the band is supposed to represent the test taker's proficiency in the tested skills, with a statistical certainty ranging from 68 to 99 percent.  Purportedly applying this approach, Alston takes the cut-off score for each state's exam (271 for Pennsylvania, and 133 for New Jersey), subtracts the standard deviation provided by the NCBE for each exam (16.1 and 15, respectively), and produces a score band of 255.9 to 288.1 for the Pennsylvania exam, and 118 to 148 for the New Jersey exam.  He then suggests that since his score on the exams (268 and 132, respectively) fell within these bands, he would have passed each had this approach been taken.

Alston thus argues that the decision not to apply the score band approach while simultaneously representing that his score accurately reflected his proficiency in the skills tested violates both the substantive and procedural due process clauses of the Fourteenth Amendment, the Takings Clause of the Fifth Amendment, and constitutes negligence and defamation under New Jersey and Pennsylvania law.

Now pending are several Motions to Dismiss, filed by Defendants NCBE and Justice Berch, and the PA and NJ Boards and their respective chairs.

## I. Motion of Defendants NCBE and Justice Berch

Defendant NCBE and its chair, the Honorable Rebecca White Berch, raise multiple arguments, starting with personal jurisdiction. As to Justice Berch, Plaintiff fails to plead any allegations regarding her conduct. I am thus without a basis to conduct an analysis as to whether personal jurisdiction exists as to that Defendant. Because it was Plaintiff's burden to demonstrate that such jurisdiction exists, *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001), I must conclude that it does not, and will dismiss Plaintiff's claims against her.

As to Defendant NCBE, there is no basis for Plaintiff's assertion of general jurisdiction. The same is not true of the case for specific jurisdiction, however, which exists where (1) the defendant has "purposefully directed its activities" at the forum, (2) the litigation arises "out of or relates to" at least one of those activities, and (3) once the prior two requirements are met, a court concludes that jurisdiction otherwise "comports with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316–17 (3d Cir. 2007).

NCBE argues that specific jurisdiction does not exist here because its activities related to Alston—design of the "MBE" portion of the bar exam and its grading system, and "recertification" of Alston's scores on that portion—took place in Wisconsin, and to the extent that their actions reached Alston, it was through Defendant PA Board's conduct. That misses the point. As Plaintiff succinctly puts it, "the relevant inquiry is not whether a defendant has purposeful contact with the *plaintiff*, but whether a defendant has purposeful contact with the *forum*." Pl.'s NCBE Sur-Reply 2, ECF No. 31. Here, NCBE contracted with the PA Board, and thus contracted with the state itself to confer services to individuals, like Alston, who would be taking the state's examination. Specifically, NCBE concedes that its relationship with the state

entails that, at a minimum, it would send testing materials into Pennsylvania, receive exam answer sheets, grade those sheets and send them back into the state so that they may be delivered to test takers. *See* Def. NCBE's Mot. 8, ECF No. 13-1. Alston is essentially alleging that the exam materials that NCBE sent into the state was administered to him, and a portion of his grade sheet from that exam was sent back to NCBE, which then employed an unconstitutional grading methodology, and sent the resulting score back to Pennsylvania.

The fact that these activities did not require NCBE to ever set foot in Pennsylvania is of no moment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State.") (emphasis in original); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir.1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."). Indeed, far from being drawn into Pennsylvania by Alston's conduct, it is NCBE's *own* conduct in contracting with the state to perform that is the basis for this action and for concluding that it purposefully directed its activities at the state.[1] Needless to say, that also satisfies the

---

[1] The cases cited by Defendant NCBE, each of which held that there was no personal jurisdiction over NCBE, do not suggest otherwise. Those cases either involved a lawsuit against an NCBE employee where the plaintiff failed to cite any conduct specific to that employee that reached the forum state, a substantively narrower long-arm statute, or a complaint devoid of allegations that the testing entity's activities were directed at the forum. *See Shestul v. Moeser*, 344 F. Supp. 2d 946, 949 (E.D. Va. 2004) (finding no personal jurisdiction as to Defendant NCBE Chair); *Walsh v. Massachusetts Bd. of Bar Exam'rs*, 2002 WL 561024, at *2 (D. Mass. 2002) (imposing sanctions against the plaintiff in part because "the plaintiff has never offered the slightest basis for any exercise by this court of personal jurisdiction over the individual defendant [NCBE Chair]"); *see also Doe v. Nat'l Conference of Bar Exam'rs*, 2017 WL 74715, at *8 (E.D.N.Y. 2017) (applying New York's long-arm statute, which only asks whether a defendant "transacted business" in the state to a case involving NCBE's refusal to process a character and fitness application) and *Clasen v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 2015 WL 9489507, at *4 (E.D. Tex. 2015) (stating that Plaintiff was not a resident of the forum state, Texas, at the time of his enrollment. He took no courses. . . . Nor did he participate in any internships, clinical rotations, or elective rotations . . . . Plaintiff's contacts with [Defendant] occurred either through [an entity] in Florida or at [Defendant's] testing facilities in Conshohocken, PA."), *adopted by*, 2016 WL 890675 (E.D. Tex. 2016).

requirement that the causes of action here "arise out of or relate to" NCBE's Pennsylvania activities.

As to whether finding jurisdiction here would comport with traditional notions of fair play and substantial justice, NCBE argues that it would not because that would render it "open to specific jurisdiction with respect to virtually any state bar examination-related claim in more than 50 jurisdictions." Def. NCBE's Mot. 10. But again, as Alston argues, that does not undercut Pennsylvania's interest in adjudicating such disputes where a resident is allegedly injured by NCBE's conduct. Moreover, NCBE's alarm over the potential scope of jurisdiction is overstated. As it vigorously argues, its contract with the state implicates only the design, grading, and re-certification of one portion of the exam. Such conduct gives rise to jurisdiction here because those actions are at the heart of Alston's grievance. In sum, I do not find anything contrary to "fair play and substantial justice" in subjecting NCBE to jurisdiction in Pennsylvania on the basis of its specific conduct targeted at, and for which it is paid by, the state.

Though jurisdiction exists, the case against NCBE is fatally flawed.

Alston raises due process and equal protection claims pursuant to the Fourteenth and Fifth Amendments, but fails to present any allegations that would render Defendant NCBE a state actor, which is a threshold requirement under 42 U.S.C. § 1983. *See Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017). NCBE is a private, non-profit corporation, which receives no public funding. Plaintiff cites no precedent to support the proposition that NCBE's activities assisting courts with the qualifications of lawyers would amount to governmental action. In the analogous context of the licensing of physicians, Judge Robreno of this Court conducted a thorough analysis of the pertinent factors and concluded that the American Board of Internal Medicine, an entity quite similar to NCBE, was not a state actor.

*Goussis v. Kimball*, 813 F. Supp. 352, 357–58 (E.D. Pa. 1993). In two non-precedential decisions, unanimous panels of the Court of Appeals have made similar holdings. *Boggi v. Med. Review & Accrediting Council*, 415 F. App'x 411, 414 (3d Cir. 2011) (holding that the National Board of Medical Examiners was not a state actor); *Munsif v. Cassel*, 331 F. App'x 954, 959 (3d Cir. 2009) (holding the same with respect to individual officers of the American Board of Internal Medicine). These claims will therefore be dismissed.

These federal claims were asserted as the basis for jurisdiction here. *See* 28 U.S.C. § 1331. Having dismissed them, I decline to exercise supplemental jurisdiction over Alston's negligence claim because it raises a novel issue of state of law: whether Defendant NCBE owed a duty to Alston upon which a negligence claim could be based. *See* 28 U.S.C. § 1367(c)(1) (providing that district courts have supplemental jurisdiction over state law claims arising out of the same transaction or occurrence, but that they may "decline to exercise supplemental jurisdiction over [such] a claim . . . if the claim raises a novel or complex issue of state law"). As I have stated before, when the question is one of legal duty, it is one that is "necessarily rooted in public policy considerations, *i.e.*, [the state's] ideas of history, morals, justice and society in general in determining where a loss should fall." *Bradley-Williams v. Agency Ins. Co. of Maryland, Inc.*, 282 F. Supp. 3d 882, 885 (E.D. Pa. 2017) (citations omitted). I also decline jurisdiction over Plaintiff's defamation claim, but further note that Plaintiff has not pled a meritorious claim under the law of any of the potentially interested jurisdictions because the statement that he failed the exam was true.

## II. Motions by Defendants PA Board, NJ Board, Keenan, and Wheeler

I next jointly analyze the separately filed Motions of Defendants PA Board and its chair, Robert Keenan, III, and NJ Board and its chair, Elizabeth Wheeler.[2] These Defendants assert many of the same procedural and substantive grounds for dismissal, at times mirroring or expanding on the arguments made by the other. Specifically, they argue that they are shielded from Alston's claims by sovereign, legislative, and quasi-judicial immunities. I need only address some of these arguments, and ultimately dismiss Alston's claims on the merits..

Both state boards claim sovereign immunity. The Supreme Court has held that the Eleventh Amendment shields each state from suits by its own citizens in federal court, unless the state consents. *Hans v. Louisiana*, 134 U.S. 1, 13–15 (1890). The same is true of suits by "citizens of another state," by virtue of the text of the provision. U.S. Const. amend. XI. Sovereign immunity is available to state agencies, departments, and state officials, to the extent that the latter are sued in their official capacity, thereby implicating their respective agency or department. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("A suit against a state official in his or her official capacity is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.") (citations omitted).

Defendants here assert that, as mere extensions of their respective state supreme courts, they qualify as state agencies and officers for purposes of the Eleventh Amendment. *See* PA Board Mot. 4 n.2, ECF No. 9 (stating that the Pennsylvania Constitution grants exclusive authority to the Supreme Court to prescribe bar admission rules, and that the PA Board was created by the Court to carry that out); NJ Board's Mot. 5, ECF No. 16 (expressing the same with respect to the New Jersey Supreme Court and NJ Board). Furthermore, "[n]either a State

---

[2] The New Jersey Board and its chair have not raised any objection based upon lack of personal jurisdiction.

nor its officials acting in their official capacities are persons under § 1983." *Hafer v. Melo*, 502 U.S. 21, 26 (1991).[3] Alston appears to concede as much, Pl.'s PA Board Resp. 6, ECF No. 24; Pl's NJ Board Resp. 6, ECF No. 26, but argues that his suit should nonetheless proceed against the individual defendants in their personal capacity since he only seeks prospective relief which is not barred under *Ex parte Young*, 209 U.S. 123 (1908).

Defendants make a strong argument that most of the relief Alston seeks is retroactive in nature, and therefore barred by sovereign immunity. *See Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 268 (2011). But even accepting that some prospective claim is not barred, the case fails on the merits. Alston's claims would require me to conclude that the Constitution mandates a specific approach to the grading of examinations to determine professional competency. There is no support in logic or precedent for such a position.. Alston first purports to assert a violation of procedural due process. But,

> "[t]o satisfy the requirements of the Due Process Clause, laws and regulations must provide specific standards which avoid arbitrary and discriminatory enforcement." . . . . The "Due Process Clause is implicated only when an agency violates regulations mandated by the Constitution or by law; or when an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency. Due process may also be violated if the government acts arbitrarily or capriciously."

*Tolchin v. Supreme Court of the State of N.J.*, 111 F.3d 1099, 1115 (3d Cir. 1997) (quoting *Grayned v. Rockford,* 408 U.S. 104, 109 (1972)). Here, both states have an exam and a methodology for grading the exam that is applied to all applicants. There is both a specific

---

[3] The Complaint fails to specify whether the claims against the individual defendants are being brought against them in their official or individual capacities. As a result, Defendants brief their motions under the assumption that it is brought against them in both capacities. Plaintiff has not challenged that assumption. I therefore proceed accordingly.

standard and uniform application of that standard. Alston would simply prefer a different standard, which is hardly the basis for a constitutional challenge.[4]

He also alleges a substantive due process violation. For purposes of the Fourteenth Amendment, the right to practice law is not fundamental, *Tolchin*, 111 F.3d at 1114, and a state's regulation of a profession will stand so long as it is rationally related to a legitimate governmental objective. *Sammon v. New Jersey Bd. of Medical Exam'rs,* 66 F.3d 639, 645 (3d Cir. 1995). Here, Plaintiff pleads: "Axiomatically and pursuant to current standardized testing theory and practice, neither the MBE sections nor the essay sections can perfectly measure a test-taker's knowledge of subject matter, ability, competency or anything else that the exams may be attempting to measure." Compl. ¶ 13. Perfection, however, is not a constitutional standard, and Defendants' choice of one method of grading over another does not amount to a constitutional violation.

Alston then summarily alleges a "takings" clause violation under the Fifth Amendment, Compl. ¶ 33. But, in factual terms, he has not been deprived of any property. He continues to hold his law degree, and is free to sit for the bar exam again, as neither Pennsylvania nor New Jersey limits the number of times an applicant can take the test. If Plaintiff had been admitted to the bar, he would have a vested property right, *see Marin v. McClincy*, 15 F. Supp. 3d 602 (W.D. Pa. 2014), but by definition he cannot have a property right in a professional license he has not

---

[4] For that matter, the alternative standard Alston proposes from the LSAT does not function as he describes. LSAT's score band is only one of several numerical scores that are in any test taker's LSAT Score Report. The primary score in that report is what is termed the applicant's "current score," which, similar to the individual score a taker receives in the bar exam context, is a student's raw score that is scaled to a range in order to adjust for minor differences in difficulty between test forms. *See Law School Admissions Test (LSAT): Your LSAT Score*, https://www.lsac.org/ jd/lsat/your-score. A test taker's LSAC Score Report consists of that score, the results of all tests the taker registered for since June 1, 2012, the taker's score band, and percentile rank. *Id.* Ultimately, the "current score" is what is primarily, if not exclusively, used by law schools and other entities considering a taker's LSAT results.

yet obtained, *see Tolchin*, 111 F.3d at 1111 (holding that one "who passes a state bar examination and otherwise qualifies for practice" has a protectable property interest).

Finally, Alston asserts an equal protection violation, contending that the methodology for grading was chosen "because of" its adverse effects upon "those who have observed scores just below the passing cutoff," *see* Pl.'s PA Board Resp. 15, ECF No. 24. Alston concedes that the grading system is facially-neutral, and applied uniformly. The distinction it draws is between those who achieve a certain score and those who do not, and such a distinction is not constitutionally infirm. The Equal Protection Clause prohibits governmental officials from drawing distinctions based on a protected characteristic such as race or national origin. In the context of a qualifying examination, "[d]iscriminatory intent implies that the decision-maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005) (citing *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979)). There is no allegation of unlawful discriminatory intent in this case.

The Motions will be granted, and Plaintiff's Complaint dismissed with prejudice as amendment would be futile.

      /s/ Gerald Austin McHugh
United States District Judge